UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**AIDA M.,**

**Plaintiff,**

     v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-00869-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on September 13, 2022, denied Plaintiff's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 5), and the Commissioner has filed a similar motion (Doc. 6).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner.

### I.  BACKGROUND

    Plaintiff protectively filed her applications for benefits on February 13, 2020, alleging that she became disabled on September 23, 2017.  After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on June 1, 2021.  Both Plaintiff and a vocational expert, Victor G. Alberigi, testified at the hearing.

    In a decision dated August 4, 2021, the Administrative Law Judge denied benefits.  He found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, and that she had not engaged in substantial gainful activity since the alleged onset date.  Next, he determined that Plaintiff had severe impairments including degenerative disc disease of the cervical and lumbar spines with cervical radiculopathy, polyneuropathy, degenerative joint disease of the bilateral knees, obesity, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder.  He also concluded, however, that those impairments, considered singly or in combination, did not meet or equal the level of severity required to qualify for disability under the Listing of Impairments.

    Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform a reduced range of light work.  She could climb ramps and stairs occasionally but was unable to climb ropes, ladders, or scaffolds.  She could also occasionally balance, stoop, kneel, crouch, and crawl.  Also, she could perform only

simple, routine, repetitive tasks and could make simple work-related decisions. The ALJ also determined that Plaintiff could occasionally interact with supervisors, coworkers, and the public, could occasionally deal with changes in the work setting, and could tolerate few changes in a routine work setting.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could not do her past relevant work as a fast food worker. However, the ALJ concluded that someone with Plaintiff's residual functional capacity and with her vocational profile could do certain unskilled light jobs including cleaner, small products assembler, and laundry sorter. He also found that such jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff did not meet the requirements for disability under the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises two issues, stated here *verbatim*:

> 1. Despite finding the opinion of Dr. Liu to be persuasive, the ALJ failed to incorporate or explain his failure to incorporate all of Dr. Liu's opined limitations.
>
> 2. The ALJ's decision regarding Plaintiff's remote Title II claim is not supported by substantial evidence, because the ALJ failed to obtain a retrospective medical opinion related to the remote relevant time period.

Plaintiff's memorandum, Doc. 5-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 40 years at the time of the administrative hearing, first testified that she lived alone and had a driver's license (but not a car). She attended college for two years but did not graduate. Her last job was working as a home heath aide, caring for her mother on a part-time basis. She had also been a food worker and a production worker. According to Plaintiff, her bipolar disorder was preventing her from working, but she also had constant pain in her knees and lower back. Sitting was her only comfortable position, and she was very limited in her ability to lift, stand, and walk.

Next, Plaintiff testified about the treatment she was receiving for bipolar disorder. She was seeing a counselor every three weeks and also saw a psychiatrist, who prescribed her medication. She described problems with her short-term memory as well as with maintaining attention and concentration and making decisions. Plaintiff also said she did not relate well to others, including family members, and did not like being in crowded places. She had panic attacks and had been diagnosed with anxiety. Plaintiff could do household chores but with some discomfort. She said she had manic periods and also found it hard to concentrate because she

heard and saw things that weren't there. Finally, she said that she often thought of suicide and that depression affected her ability to perform necessary chores.

The vocational expert, Mr. Alberigi, first classified Plaintiff's past work as a food worker as unskilled and light. He was then asked question about a person who could do light work with postural restrictions, and he said those restrictions would not rule out her past work. However, if she could only interact occasionally with the public, that job was precluded. Next, he was asked about a person who had Plaintiff's vocational profile and also had certain additional physical and mental restrictions, and he identified jobs that such a person could do such as office cleaner, small products assemblers, and laundry sorter. He also gave numbers for those jobs as they existed in the national economy. If the person were limited to sedentary work, she or he could still do jobs like envelope clerk, document clerk, or assembler of optical goods. However, if the person could have no contact with the public, would be off task up to 20% of the workday, and would miss two or more days of work per month, that person could not work.

## B. Medical Evidence

### 1. Treatment records

A treatment note from November of 2018 indicates that, by that time, Plaintiff had been diagnosed with bipolar disorder and was taking medication for that condition. A prior note also showed a diagnosis of major depressive disorder with psychotic features. By 2019, she had stopped taking medications and was actively looking for work as a bus driver. She had reported knee pain in December of 2018 following slipping on snow. The diagnosis of anxiety disorder was added in 2019 but Plaintiff had said she had suffered from anxiety for many years prior to that. She also stated that she had a history of lead poisoning and she said she heard voices from time to time and experienced chronic pain in her ankles, knees, lower back, and shoulders. Her treatment plan at that time included weekly individual therapy sessions. In 2020 she reported some improvement in her symptoms with abilify and said overall she was doing well. Notes from 2021 showed her to be attentive and focused and did not indicate any memory deficits.

In February, 2020, Plaintiff saw Dr. Li for evaluation of nerve pain throughout her body. She was assessed with parasthesia and cervical radiculopathy and an MRI of the brain was recommended, which turned out to be negative for any abnormalities. She also had an EMG of the upper extremities done the following month and the results were normal, but an MRI of the cervical spine produced some mild findings. In 2021 she reported some bilateral knee pain and was treated for osteoarthritis with a series of cortisone injections. She was also taking ibuprofen for back pain and said she was doing well, and she was encouraged to exercise on a daily basis.

### 2. Consultative and State Agency Opinions

Plaintiff was examined consultatively by Dr. Santarpia, a psychologist, on July 2, 2020. She told Dr. Santarpia that she had been diagnosed with depression, dissociation, anxiety, and

-3-

schizophrenia. She was currently in counseling. Plaintiff said her symptoms included difficulty sleeping, depressed mood, and social withdrawal. During the exam, her affect was full and appropriate and her mood was euthymic. Deficits in concentration and attention were noted, but that could have resulted from lack of effort, and she refused to perform certain calculations that she had done successfully during past evaluations. Her memory skills were intact. Dr. Santarpia concluded that Plaintiff could follow both simple and complex directions, use reason and judgment, interact appropriately with others, sustain attention and concentration, and attend work on a regular basis. (Tr. 804-08).

The same day, Plaintiff saw Dr. Liu for an internal medicine examination. She reported whole body joint pain exacerbated by exercise and cold weather. She told Dr. Liu she could do cooking, cleaning, and laundry, and could shower and dress herself. Her daily activities included watching television, listening to the radio, and reading books as well as socializing with friends. On examination, she walked with a limping gait and was limited in her ability to squat due to back and knee pain. She had some limitation in the range of motion in her cervical and lumbar spine. Dr. Liu concluded that she was moderately limited in her ability to engage in prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting and standing, and stair climbing. (Tr. 809-13).

State agency consultants also reviewed the records and offered opinions as to Plaintiff's functional capacity. In an opinion issued on July 17, 2020, Dr. Lawrence found that Plaintiff could do light work but had some limitations in her ability to climb ramps, stairs, ladders, ropes, and scaffolds, and also in her ability to balance, stoop, kneel, crouch, and crawl. (Tr. 70-72). On January 5, 2021, Dr. Ehlert also concluded that Plaintiff could do light work with some postural restrictions. (Tr. 105-08). Neither of the psychological consultants believed that Plaintiff had a severe mental impairment.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  Dr. Liu's Opinion

Plaintiff first argues that the ALJ erred by finding that Dr. Liu's opinion about Plaintiff's moderate limitations for prolonged physical activities to be persuasive while, at the same time, determining that Plaintiff could do light work, and without explaining how that conclusion could be reconciled with Dr. Liu's opinion.  She further argues that the language used by Dr. Liu was too vague to base a residual functional capacity finding on, but even if it were not, moderate limitations in prolonged walking and standing may not be consistent with the requirements of light work activity.  In response, the Commissioner contends that the ALJ simply found Dr. Lawrence's and Dr. Ehlert's conclusions to be more persuasive, and that an ALJ is entitled to resolve these types of conflicts in the medical evidence by choosing one over the other.

The ALJ began his analysis of the medical opinions by finding that the views of Drs. Lawrence and Ehlert were "mostly persuasive."  (Tr. 24).  As noted above, both of them concluded that Plaintiff could do light work with postural restrictions.  The ALJ observed that both consultants relied on findings in the record that Plaintiff had normal extremities and intact sensation and full range of motion in all of her joints except the cervical and lumbar spines, although she did have osteoarthritis in her right knee and a right-sided limp.  He pointed out that their opinions were "consistent with the overall evidence of record...."  *Id*.  The only point of disagreement that the ALJ appeared to have with the state agency consultants was that the postural restrictions they identified were not favorable enough to Plaintiff, and he limited Plaintiff to the occasional, rather than frequent, performance of most of those activities.  *Id*.

Next, the ALJ reviewed Dr. Liu's findings, which he also determined to be persuasive. The ALJ based that determination on the fact that Dr. Liu's opinion was "supported by his own examination of the claimant" and was "consistent with the overall evidence of record," citing the same portions of the record which supported the state agency consultants' findings.  (Tr. 24-25). Consequently, he found that Plaintiff could do light work with a number of postural limitations, including a complete restriction of the climbing of ladders, ropes, and scaffolds.  (Tr. 26).  The ALJ did not discuss the question of whether there were any conflicts between Dr. Liu's and the

state agency consultants' opinions.

One portion of Plaintiff's argument is that the use of the term "moderate" in Dr. Liu's opinion is too vague to permit the formulation of a residual functional capacity. There is certainly some language suggesting that to be an issue in cases such as *Moe v. Colvin*, 2017 WL 6379239 (W.D.N.Y. 2017), but later decisions from this Court have declined to create a hard and fast rule that such language, by itself, necessitates a remand for further clarification. So, for example, in *Reid v. Comm'r of Soc. Sec.*, 2019 WL 2250015 (W.D.N.Y. May 23, 2019), this Court held that when an opinion using that term is accompanied by the full results of a physical examination, an ALJ can properly based a residual functional capacity finding on the entirety of the record. *See also Ayesha W. v. Comm'r of Soc. Sec.*, 2022 WL 1308166, *10 (W.D.N.Y. May 2, 2022)("Contrary to Plaintiff's argument, a medical source's use of 'mild' or 'moderate' when describing work-related limitations does not automatically render the assessment so vague that it is useless without clarification"). Here, Dr. Liu's opinion was accompanied by a narrative report of his examination findings which placed the restrictions he imposed into context, and it is also not the only opinion upon which the ALJ relied. Further, the two state agency consultants had the benefit of Dr. Liu's examination findings when they concluded that Plaintiff had the ability to do light work. Consequently, there is no merit in the contention that a remand is needed just because Dr. Liu described Plaintiff's limitations as "moderate."

As to the balance of Plaintiff's first argument, Plaintiff relies on, among other decisions, the case of *Allen N. v. Comm'r of Soc. Sec.*, 2023 WL 34799 (Jan. 4., 2023), where this Court said, after noting a conflict in decisions about whether a moderate limitation on prolonged walking is consistent with the ability to do light work, that "[i]n sum, a 'mild to moderate' restriction in 'prolonged' walking may or may not be consistent with an RFC for light work. But here, this Court has no way of evaluating which is true, since the ALJ did not make a specific finding about how long Allen could walk, and there is nothing in the record clarifying the limitations opined by Dr. Liu." *Id.* at *3. Dr. Liu's objective findings included the fact that the claimant was unsteady on his feet and had difficulty balancing, and the ALJ did not explain how someone with those limitations could still engage in the type of walking or standing required to do light work. *Id*.

The Court can see how, in a case where the physical findings appear to call into question a claimant's ability to stand or walk for six hours in an eight-hour day, the conclusion that the claimant has a moderate limitation in prolonged walking and standing might not be consistent with the ability to perform light work. But, as this Court determined in *Daniel James V. v. Comm'r of Soc. Sec.*, 2023 WL 128521 (W.D.N.Y. Jan. 9, 2023), where the findings were not so extreme, and the ALJ had the benefit of a state agency consultant's opinion that the claimant was capable of light work, the ALJ was entitled to find that the claimant could perform the walking and standing requirements of such work even though he found the consultative examiner's opinion to be persuasive. This case more closely resembles the facts in *Daniel James V.,* and the Court similarly concludes that the ALJ acted permissibly in reaching his physical residual functional capacity determination. This first claim of error therefore lacks merit.

## B. Title II Claim

As her second claim of error, Plaintiff argues that the ALJ erred by not ordering a retrospective physical evaluation of her claim for disability benefits, a claim which covered the period only from her alleged onset date of September 23, 2017 until the end of her insured status on December 31, 2017. Plaintiff asserts that this omission violated the ALJ's duty to develop the record fully. In response, the Commissioner asserts that where, as here, there are no obvious gaps in the treatment record and the record is adequate to support the ALJ's conclusions, there was no need for the ALJ to supplement the record.

The gist of Plaintiff's argument is that there is no medical opinion in the record that assesses her physical condition on or before December 31, 2017, nor any evidence as to her functional limitations at that time. She notes that state agency physical and psychological consultants both concluded that there was not enough evidence in the record to make an assessment as to the Title II claim. She then concludes that since there are mental as well as physical impairments which existed during the relevant time frame and an ALJ may not make a functional assessment of mental limitations on the basis of his own lay interpretation of the record, the case should be remanded for further consideration of this issue.

It is true, as Plaintiff claims, that both Dr. Ehlert and Dr. Lawrence, who were tasked with evaluating Plaintiff's physical residual functional capacity, did not think the medical evidence was sufficient to evaluate the Title II claim, and Dr. Chapman, the reviewing psychologist, reached the same conclusion. Their conclusions appears to have been based on the fact that there were either no treatment records for the relevant time frame, or the few records which did exist were not sufficient to evaluate her claim of disability. But there is also no indication that there are any additional records available which could have been obtained and which might have contained more information about the extent of her functional limitations during that time, nor does the record suggest that her condition from her onset date to her last insured date was worse than during the later time frame when her functional capacity was evaluated.

It is difficult to see what purpose a remand would serve here given that there do not appear to be any records for the ALJ to obtain and in light of the fact that several consultants have already said that the record, as it stands, does not permit a functional capacity evaluation to be made for that specific three-month time frame. As the Court of Appeals has said, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information ...." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Further, it helpful to remember, as the Commissioner points out, that "[t]he initial burden of establishing the claimed disability was on [Plaintiff]." *Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989). The Court of Appeals observed in that case that the claimant's "failure to present any medical evidence from [the relevant time] period seriously undermines his contention that he was continuously disabled during that time." *Id*. at 39. The same is true here. Consequently, the Court finds no merit in Plaintiff's second claim of error.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 5), **GRANTS** the Commissioner's motion (Doc. 6), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

<u>**/s/ Terence P. Kemp**</u>
**United States Magistrate Judge**